ISABELLE L. ORD (BAR NO. 198224)
isabelle.ord@dlapiper.com
JULIA M. BRIGHTON (BAR NO. 280418)
julia.brighton@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, California 94105
Telephone: (415) 836-2500
Facsimile: (415) 836-2501

CHRISTOPHER JONES  (admitted *pro hac vice*)
Chris.Jones@wbd-us.com
JOHNNY LOPER (admitted *pro hac vice*)
Johnny.Loper@wbd-us.com
JONATHON TOWNSEND (CA BAR NO. 293918)
Jonathon.Townsend@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: (919) 755-2100
Facsimile: (919) 755-2150

Attorneys for Defendants FUTURE
INCOME PAYMENTS, LLC, PENSIONS,
ANNUIITIES, AND SETTLEMENTS, LLC,
and SCOTT A. KOHN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN UNDERWOOD, on behalf of himself and all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>FUTURE INCOME PAYMENTS, LLC; PENSIONS, ANNUITIES AND SETTLEMENTS, LLC; CASH FLOW INVESTMENT PARTNERS, LLC; AND SCOTT A. KOHN,<br><br>　　　　Defendants. | Case No. CV 8:17-cv-01570-DOC-DFM<br><br>**REPLY IN SUPPORT OF MOTION TO STRIKE CLASS ACTION ALLEGATIONS AND DISMISS CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:　　　　January 22, 2018<br>Time:　　　　8:30 a.m.<br>Courtroom:　9D |

WEST\279909047.1

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................. 1

II.  PLAINTIFF CANNOT STATE A CLAIM AGAINST KOHN BY
LUMPING HIM TOGETHER WITH FIP. ........................................... 3

III.  PLAINTIFF'S UCL, CLRA, USURY, TILA, AND CIVIL RICO
CLAIMS ARE TIME BARRED. ........................................................ 8

    A.  Plaintiff's Admission that He Received and Signed the
Agreement in December 2012 Bars His CLRA, UCL, and civil
RICO Claims. .............................................................................. 8

        1.  Plaintiff's civil RICO claim fails because the Agreement
provided him with both actual and constructive
knowledge of his alleged injury ......................................... 10

        2.  Plaintiff cannot invoke the "discovery rule" because the
Agreement put him on inquiry notice and he has not
pleaded any facts that he discovered during the limitations
period. ................................................................................ 12

    B.  Plaintiff Has Not Alleged Sufficient Facts to Justify Equitable
Tolling of the Statute of Limitations for His TILA Claims. ............... 13

    C.  Plaintiff Cannot Invoke the "Continuous Accrual Doctrine"
Because the CAC is Premised on a Fraud Theory Emanating
from Facts Disclosed in the Agreement. ............................................... 14

IV.  THE CONTRACTUAL CHOICE-OF-LAW PROVISION DOES
NOT ALLOW THIS COURT TO APPLY THE UCL
EXTRATERRITORIALLY TO PLAINTIFF ..................................... 16

V.  THE CLRA DOES NOT APPLY TO PLAINTIFF'S ALLEGED
"LOAN." ........................................................................................... 19

VI.  THE CLASS ACTION WAIVER PROHIBITS PLAINTIFF FROM
PROCEEDING AS A CLASS REPRESENTATIVE AND
WARRANTS STRIKING THE CLASS ALLEGATIONS..................... 21

VII.  CONCLUSION ................................................................................... 24

i

# TABLE OF AUTHORITIES

**Page**

C<small>ASES</small>

*Adams v. United of Omaha Life Ins. Co.*,
  Case No. SACV 12-969-JST, 2013 WL 12113224 (C.D. Cal. Apr.
  24, 2013) ........................................................................................... 16

*Alborzian v. JPMorgan Chase Bank, N.A.*,
  235 Cal. App. 4th 29 (2015) ..................................................... 20, 21

*Almont Ambulatory Surgery Ctr, LLC v. UnitedHealth Grp., Inc.*,
  Case No. CV 14-3053-MWF(VBKx), 2015 WL 12777091 (C.D.
  Cal. Feb. 12, 2015) ............................................................................. 4

*Am. W. Door & Trim v. Arch Specialty Ins. Co.*,
  No. CV 15-00153 BRO SPX, 2015 WL 1266787 (C.D. Cal.
  Mar. 18, 2015) .................................................................................. 22

*Arguelles-Romero v. Superior Court*,
  184 Cal. App. 4th 825 (2010) ........................................................... 23

*Aryeh v. Canon Business Solutions, Inc.*,
  55 Cal. 4th 1185 (2013) ....................................................... 14, 15, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................ 7

*Benedict v. Wells Fargo Bank, N.A.*,
  No.14-0770, 2014 WL 2957753 (C.D. Cal. Jun. 30, 2014) ............... 20

*Benson v. S. California Auto Sales, Inc.*,
  239 Cal. App. 4th 1198 (2015), *rev. denied* (Nov. 24, 2015) ........... 21

*Berry v. Am. Exp. Publishing, Inc.*,
  147 Cal. App. 4th 224 (2007) ........................................................... 19

*Branch v. Tunnell*,
  14 F.3d 449 (9th Cir. 1994), *overruled on other grounds in*
  *Galbraith v. Cnty. of Santa Clara,* 307 F.3d 1119 (9th Cir. 2002) .... 15

*Cervantes v. Countrywide Home Loans, Inc.*,
  656 F.3d 1034 (9th Cir. 2011) .......................................................... 14

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

4

*Consumer Solutions REO, LLC v. Hillery*,
   658 F. Supp. 2d 1002 (N.D. Cal. 2009)................................................20

5

6

*CPR for Skid Row v. City of Los Angeles*,
   779 F.3d 1098 (9th Cir. 2015).............................................................23

7

8

*Curci Investments, LLC v. Baldwin*,
   14 Cal. App. 5th 214 (2017).................................................................7

9

*Emery v. Visa Int'l Serv. Ass'n*,
   95 Cal. App. 4th 952 (2002).................................................................7

10

11

*Fairbanks v. Superior Court*,
   46 Cal. 4th 56 (2009)...........................................................................19

12

13

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005).........................................................................12

14

15

16

*Gamble v. GMAC Mortg. Corp.*,
   No. C-08-05532 RMW, 2009 WL 400359 (N.D. Cal. Feb. 18,
   2009)......................................................................................................15

17

*Gerbitz v. ING Bank, FSB*,
   967 F. Supp. 2d 1071 (D. Del. 2013) ..................................................20

18

19

*Gravquick A/S v. Trimble Navigation International*,
   323 F.3d 1219 (9th Cir. 2002)..............................................................17

20

21

*Grimmett v. Brown*,
   75 F.3d 506 (9th Cir. 1996) .................................................................10

22

23

24

*Gustafson v. SunTrust Mortg., Inc.*,
   CV 13-1502 PSG (SHx), Slip Copy, 2013 WL 12122436 (C.D. Cal.
   May 13, 2013).......................................................................................16

25

26

*Haskin v. R.J. Reynolds Tobacco Co.*,
   995 F. Supp. 1437 (M.D. Fla. 1998) .....................................................4

27

*Hernandez v. Hilltop Fin. Mortg., Inc.*,
   622 F. Supp. 2d 842 (N.D. Cal. 2007)..................................................19

28

1

2

## TABLE OF AUTHORITIES
(continued)

Page

3

4

*In re Schwarzkopf*,
   626 F.3d 1032 (9th Cir. 2010) ...................................................... 6

5

6

*In re Toyota Motor Corp.*,
   785 F. Supp. 2d 883 (C.D. Cal. 2011) ....................................... 18

7

8

*In re Yahoo! Litigation*,
   251 F.R.D. 459 (N.D. Cal. 2008) ....................................... 22, 23, 24

9

*Jamison v. Bank of Am., N.A.*,
   194 F. Supp. 3d 1022 (E.D. Cal. 2016) ...................................... 20

10

11

*Leek v. Cooper*,
   194 Cal. App. 4th 399 (2011) ....................................................... 5

12

13

*Living Designs, Inc. v. E.I. Du Pont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005) ................................................ 10, 11

14

15

*Manning v. Boston Med. Ctr. Corp.*,
   725 F.3d 34 (1st Cir. 2013) ......................................................... 22

16

17

*Marshall v. PH Beauty Labs, Inc.*,
   2015 WL 3407906 (C.D. Cal. May 27, 2015) ............................ 13

18

19

*Martinez v. America's Wholesale Lender*,
   No. EDCV 09-893-VAP, 2010 WL 431220 (C.D. Cal. Feb. 1,
   2010) ........................................................................................... 14

20

21

*Math Magicians, Inc. v. Capital for Merchants LLC*,
   No. B241937, 2013 WL 6192559 (Cal. Ct. App. Nov. 26, 2013) ...................... 23

22

23

*McGee v. Weinberg*,
   97 Cal. App. 3d 798 (1979) ........................................................ 13

24

25

*McKelvey v. Boeing N. Am., Inc.*,
   74 Cal. App. 4th 151 (1999) ....................................................... 12

26

27

*Meadows v. Emett & Chandler*,
   99 Cal. App. 2d 496 (1950) .......................................................... 6

28

1

2

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Miller v. Taryle*,
   Case No. CV 13-02390 GAF, 2013 WL 12205851 (C.D. Cal.
   Sept. 10, 2013) ................................................................................. 4

*Moore v. Regents of the Univ. of Cal.*,
   248 Cal. App. 4th 216 (2016) ........................................................... 20

*O'Connor v. Uber Tech., Inc.*,
   58 F. Supp. 3d 989 (N.D. Cal. 2014) ................................................ 17

*O'Connor v. Uber Tech., Inc.*,
   No. C-13-3826 EMC, 2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) .............. 6, 17

*People v. Regan*,
   95 Cal. App. 3d Supp. 1 (1979) ......................................................... 6

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) .................................. 18

*Pincay v. Andrews*,
   238 F.3d 1106 (9th Cir. 2001) ................................................ 10, 11, 12

*Rex v. Chase Home Finance, LLC*,
   905 F. Supp. 2d 1111 (2012) ........................................................ 19, 20

*Romero v. Securus Techs., Inc.*,
   216 F. Supp. 3d 1078 (S.D. Cal. 2016) ............................................. 22

*Sanders v. Apple, Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ............................................... 22

*Schneider v. Cal. Dept. of Corrections*,
   151 F.3d 1194 (9th Cir. 1998) .......................................................... 21

*Small Axe Enterprises, Inc. v. Amscan, Inc.*,
   Case No.: 3:16-cv-00981-BEN-WVG, Slip Op., 2017 WL 1479236
   (S.D. Cal. Apr. 25, 2017) ................................................................. 16

*Sonora Diamond Corp. v. Superior Court*,
   83 Cal. App. 4th 523 (2000) ............................................................ 6, 7

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

(continued)

**Page**

3

*Sullivan v. Oracle Corp.*,

4

    51 Cal. 4th 1191 (2011)........................................................................17

5

*Swartz v. KPMG LLP*,

6

    476 F.3d 756 (9th Cir. 2007)..........................................................3, 4, 5

7

*Tidenberg v. Bidz.com, Inc.*,

    No. CV 08-5553 PSG, 2009 WL 605249 (C.D. Cal. Mar. 4, 2009).....4, 5, 17, 18

8

9

*Tompkins v. 23andMe, Inc.*,

    840 F.3d 1016 (9th Cir. 2016)..........................................................23

10

*Torrent v. Ollivier*,

11

    Case No. CV 15-02511 DDP (JPR), 2016 WL 4596341 (C.D. Cal.

12

    Sept. 6, 2016)...................................................................................5

13

*Ung v. GMAC Mortg., LLC*,

14

    2009 WL 2902434 (C.D. Cal. Sept. 4, 2009)...............................13, 14

15

*Walnut Producers of California v. Diamond Foods, Inc.*,

16

    187 Cal. App. 4th 634 (2010)............................................................23

17

*Wright v. Adventures Rolling Cross Country, Inc.*,

    No. C-12-0982 EMC, 2012 WL 12942824 (N.D. Cal. May 3, 2012) ...............17

18

19

**STATUTES**

Cal. Civ. Code § 1770(a)(26) ...........................................................20, 21

20

21

**OTHER AUTHORITIES**

22

Fed. R. Civ. P. 8........................................................................................1, 2

23

Fed. R. Civ. P. 9........................................................................................1, 2

24

Fed. R. Civ. P. 9(b) .................................................................................passim

25

Fed. R. Civ. P. 12(b)(5) ..............................................................................3

26

Fed. R. Civ. P. 12(b)(6) .............................................................................21

27

Fed. R. Civ. P. 12(f)....................................................................................22

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE AND MOTION TO DISMISS

# TABLE OF AUTHORITIES
(continued)

**Page**

Fed. R. Evid. 201 ........................................................................................... 1

Fed. R. Evid. 401 ........................................................................................... 1

Senate B. No. 386, 2015-2016 Reg. Sess. (Cal. Sept. 2, 2014) ................................ 21

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE AND MOTION TO DISMISS

## I.    INTRODUCTION

Plaintiff's Class Action Complaint (Dkt. No. 1 - "CAC") arises from his 2012 "Purchase and Sale Agreement" (Dkt. No. 30-2 - the "Agreement") with Future Income Payments, LLC ("FIP").  The terms of the Agreement are clear: Plaintiff agreed to sell a portion of the future income stream from sixty months of his pension payments to FIP for $10,000.  Plaintiff does not allege that the Agreement omits any material terms and, in contrast to his purported surprise at the Agreement's terms, Plaintiff initialed next to a capitalized, bold, and underlined statement that "Seller will receive substantially less money than if seller were to retain the periodic payments comprising the purchased asset."  (Agreement, Exh. C § 4.)  Plaintiff also initialed the Agreement's class action waiver.  (*Id.*, Exh. C § 6.) Despite having had access to this information for five years, Plaintiff filed this putative class action in 2017 - months after the latest statute of limitations had run in 2016 - lambasting FIP for entering into the Agreement with him and claiming that the Agreement violates several California and federal statutes.

In his Response to Defendants' Motion to Strike and Dismiss (Dkt. No. 38 - "Opposition" or "Opp."), Plaintiff urges this Court to overlook the deficiencies in the CAC raised in Defendants' brief (Dkt. No. 30-1 – "Motion" or "Mot.") and to adopt Plaintiff's skewed depiction of FIP and the Agreement at the pleading stage.[1] According to Plaintiff, the deficiencies with the CAC identified in the Motion—the timeliness of Plaintiff's five-year-old claims, the scope of California's consumer protection statutes, the pleading standards under Rules 8 and 9 of the Federal Rules of Civil Procedure, and the enforceability of the class action waiver initialed by

---

[1] Plaintiff submitted a Request for Judicial Notice attaching an unexecuted order from the California Department of Business Oversight and an unsigned stipulation. (Dkt. Nos. 39-2, 39-3.)  These documents are unauthenticated, do not contain any findings or adjudications, and have nothing to do with whether Plaintiff has stated viable claims against Defendants.  Defendants will refute Plaintiff's spurious allegations at the appropriate time, but here ask that the Court deny Plaintiff's Request for Judicial Notice and to disregard these documents.  *See.* Fed. R. Evid. 201, 401.

WEST\279909047.1

Plaintiff—are "ancillary grounds" that "distract from the substance of Plaintiff's claims." (Opp. at p. 1.) To the contrary, the issues raised in Defendants' Motion are threshold issues that serve as an absolute bar to the CAC and Plaintiff's claims therein, and Plaintiff's Opposition failed to overcome these deficiencies.

First, Plaintiff's allegations that FIP and Kohn "worked together" do not allow Plaintiff to use blanket allegations against "Defendants" in violation of the pleading standards of Rules 8 and 9, nor do such allegations permit Plaintiff to ignore the fact that FIP is a separate corporate entity from its member, Kohn. Plaintiff cannot, as he attempts to do throughout the CAC, attribute FIP's alleged conduct to Kohn individually unless Plaintiff pleads an alter ego theory or alleges that Kohn personally participated in the alleged conduct. Plaintiff's failure to allege facts against each individual defendant requires dismissal of the CAC.

Second, Plaintiff cannot deny that the statutes of limitations for his claims began to run in 2012 because he admits that the Agreement constitutes "uncontroverted evidence regarding the nature of the transaction in question." (Opp. at p. 1.) Plaintiff's contention that he did not construct his legal theory that the Agreement was a "loan" until later does not toll the statutes of limitations because that argument is based exclusively on facts disclosed to Plaintiff in December 2012.

Third, the Agreement's choice of law provision does not trump California's presumption against applying the UCL extraterritorially, and Plaintiff has not pleaded facts to justify applying the UCL to a non-resident's conduct outside of California. In fact, the Agreement's choice of law provision would necessarily incorporate California law that the UCL does not apply extraterritorially and therefore does not apply to Plaintiff's conduct outside of California.

Fourth, the CLRA does not apply to extensions of credit or payment of money, including Plaintiff's alleged "loan" transaction.

/////

2

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE AND MOTION TO DISMISS

1      Fifth, the CLRA's anti-waiver provision is irrelevant because the CLRA

2 claim must be dismissed and Plaintiff has not argued that the anti-waiver provision

3 is unconscionable or otherwise identified any additional information this Court

4 needs before it can determine whether the class action waiver bars Plaintiff's class

5 action allegations.  The question is ripe for determination by this Court, and the

6 motion to strike Plaintiff's class allegations should be granted with prejudice.

7      For the reasons stated in their Motion and herein, Defendants respectfully

8 request that the CAC be dismissed in whole with prejudice and/or that the class

9 allegations be stricken from the CAC.

10 **II.   PLAINTIFF CANNOT STATE A CLAIM AGAINST KOHN BY LUMPING HIM TOGETHER WITH FIP.[2]**

11

12      Plaintiff insists that there is nothing improper about lumping together FIP

13 and Kohn as "Defendants" without attributing specific allegations to each

14 defendant, Kohn in particular.  (Opp. at p. 11.)  According to Plaintiff, he may

15 disregard the corporate separateness of FIP and "treat [FIP and Kohn] as a

16 collective" because he alleges that "the Defendants were all engaging in the same

17 illegal conduct together," "worked together in a unified fashion to enrich

18 themselves through their predatory financial scheme," and "FIP, and all affiliated

19 advertisers, acted in concert to sell illegal loans at the direction of Kohn."  (Opp. at

20 pp. 11-12.).  Plaintiff is wrong for at least three reasons.

21      First, Plaintiff concedes that Rule 9(b)'s heightened pleading standards

22 govern his UCL and CLRA "fraudulent" claims (Opp. at p. 4), and "Rule 9(b) does

23 not allow a complaint to merely lump multiple defendants together but 'require[s]

24 plaintiffs to differentiate their allegations when suing more than one

25 defendant . . . and inform each defendant separately of the allegations surrounding

26 his alleged participation in the fraud.'"  *Swartz v. KPMG LLP*, 476 F.3d 756,

27

---

28 [2] Plaintiff personally served Kohn after Defendants filed their Motion, mooting Kohn's motion to dismiss under Rule 12(b)(5).

WEST\279909047.1

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE AND MOTION TO DISMISS

764-65 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)).  In *Swartz*, the Ninth Circuit upheld dismissal of a complaint "shot through with general allegations that the 'defendants' engaged in fraudulent conduct but attribute[ing] specific misconduct only to [certain defendants]," and relied on conclusory allegations that the defendants acted in concert or as agents of one another.  *Id.*; *see also Tidenberg v. Bidz.com, Inc.*, No. CV 08-5553 PSG (FMOx), 2009 WL 605249, at *8 (C.D. Cal. Mar. 4, 2009) ("The law does not, as Plaintiff believes it does, allow a plaintiff to bootstrap claims against a corporation's executives, board members, or shareholders to a sufficiently pleaded fraud claim against the corporation itself, simply by virtue of the relationship between the corporation and the executives, board members, and shareholders."); *Miller v. Taryle*, Case No. CV 13-02390 GAF (JCx), 2013 WL 12205851, at *5 (C.D. Cal. Sept. 10, 2013) (holding that fraud claim against a company and its owner failed to satisfy Rule 9(b) because the complaint relied on allegations against "Defendants"); *Almont Ambulatory Surgery Ctr, LLC v. UnitedHealth Grp., Inc.*, Case No. CV 14-3053-MWF(VBKx), 2015 WL 12777091, at *9 (C.D. Cal. Feb. 12, 2015) ("Allegations that 'everyone did everything' are insufficient.").

This Court's holding in *Tidenberg* applies here.  In that case, the Court held that the plaintiff failed to state a claim under Rule 9(b) against individual defendants who were owners and officers of the corporate defendant because the plaintiff failed to allege claims against each defendant individually.  *Tidenberg*, 2009 WL 605249, at *8.  Instead, "all of the relevant allegations concerning the fraudulent conduct at issue [were] made only in reference to the [corporate defendant]" and "it is not until paragraph 73 of the SAC when Plaintiff first [began] to make allegations concerning the [individual defendants'] conduct." *Id.*  Even then, the Court noted, the allegations against the individual defendants consisted of

/////

1   the blanket term "Defendants." *Id.*  The Court held that "such categorical grouping
2   is not permitted" and does not satisfy Rule 9(b).  *Id.*

3          Plaintiff's allegations against Kohn mirror the allegations rejected by this
4   Court in *Tidenberg*.  The 33 paragraphs of "substantive allegations" focus almost
5   exclusively on FIP (CAC ¶¶ 30-63), and Plaintiff relegates most his allegations
6   against Kohn to end of the CAC, where, aside from the civil RICO claims, the
7   allegations against Kohn refer only to "Defendants."  Pursuant to the Ninth
8   Circuit's holding in *Swartz* and this Court's decision in *Tidenberg*, Plaintiff's
9   pleading tactic does not satisfy Rule 9(b) and the fraud-based claims against Kohn
10  must be dismissed.[3]

11         Second**,** Plaintiff cannot obtain the benefit of an alter ego theory—attributing
12  FIP's conduct to Kohn individually—without pleading the requisite facts to support
13  an alter ego theory.  "The essence of the alter ego doctrine is that . . . the individual
14  shareholder is liable for the actions of the corporation."  *Leek v. Cooper*, 194 Cal.
15  App. 4th 399, 406 (2011).  But "[t]he proper method for determining whether the
16  sole shareholder of a corporate employer is liable for the wrongdoing
17  employer/corporation is by the application of an alter ego theory."  *Id.*  The alter
18  ego doctrine requires more than just conclusory allegations that Kohn owns or
19  controls FIP.  Notably, "[a]n allegation that a person owns all of the corporate stock
20  and makes all of the management decisions is insufficient to cause the court to
21  disregard the corporate entity."  *Id.* at 415; *Torrent v. Ollivier*, Case No. CV 15-
22  02511 DDP (JPR), 2016 WL 4596341, at *4 (C.D. Cal. Sept. 6, 2016) (dismissing
23  UCL and CLRA claims with prejudice because "the only specific facts alleged
24  regarding [the individual defendant] are that he founded one corporate defendant
25  and serves as a corporate officer and 'opened the doors' of the other corporate

26  _____

27  [3] Plaintiff claims he satisfied Rule 9(b)'s pleading standard as to the alleged
    misrepresentations in the Agreement, (Opp. at pp. 4-7), but does not argue that he
    properly pleaded any other alleged misrepresentations.  The Motion should be
28  granted as to any misrepresentation not included in the Agreement.

defendant."); *Meadows v. Emett & Chandler*, 99 Cal. App. 2d 496, 499 (1950)
("Mere ownership of all the stock and control and management of a corporation by
one or two individuals is not itself sufficient to cause the courts to disregard the
corporate entity.").

Except for alleging Kohn's ownership and control of FIP, Plaintiff does not
argue that he has satisfied any of the factors required for an alter ego theory.  *See,
e.g.*, *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (listing factors that
California courts consider, such as commingling of funds, treatment of corporate
assets as individual assets, disregard for corporate formalities, diversion of assets to
a stockholder or other entity to the detriment of creditors, and manipulating the
concentration of assets).  Yet Plaintiff demands that Kohn be held liable for FIP's
alleged conduct because "Defendants were all engaging in the same illegal conduct
together."  (Opp. at p. 12.)

Courts have rejected similar attempts to sidestep the alter ego pleading
requirements by grouping together defendants and attributing all of a corporate
entity's actions or conduct to individual owners or officers solely because they are
the owners or officers.  *See O'Connor v. Uber Tech., Inc.*, No. C-13-3826 EMC,
2013 WL 6354534, at *18 (N.D. Cal. Dec. 5, 2013) ("Identifying their roles in the
corporation and alleging that they were 'responsible' for pay practices and
employment policies does not make it plausible that they were personally liable,
any more than it would make any officer responsible for the torts allegedly
committed by their corporation."); *cf. People v. Regan*, 95 Cal. App. 3d Supp. 1, 4
(1979) (emphasizing that a person does not become criminally liable under § 17500
merely by virtue of his status as a business owner).

Plaintiff's attempt to hold Kohn personally liable by using "Defendants" as
an umbrella term referring to both FIP and Kohn contravenes black letter law
recognizing that a limited liability company exists separate and apart from its
members and owners. *See, e.g.*, *Sonora Diamond Corp. v. Superior Court*, 83 Cal.

WEST\279909047.1

6

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE AND MOTION TO DISMISS

App. 4th 523, 538 (2000) ("Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations."); *Curci Investments, LLC v. Baldwin*, 14 Cal. App. 5th 214, 220 (2017) (quoting *Sonora Diamond* regarding the separation between corporations and stockholders and noting that "[t]he same is true of a limited liability company (LLC) and its members and managers"). Thus, Plaintiff's claims against Kohn (except for his civil RICO claim, which should be dismissed on other grounds as detailed below) should be dismissed for failing to state a claim against Kohn.

Third, California law allows Plaintiff to sue Kohn individually under the UCL only if Plaintiff alleges that Kohn personally participated in the alleged conduct and exercised "unbridled control" over the practices that purportedly violate the UCL. *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002). Here, the only allegations that Kohn "personally participated" in the purported "scheme" are that he owns FIP, serves as its sole member, and has authority to make the decisions on behalf of FIP. (CAC ¶ 23.) Plaintiff does not, for instance, allege that Kohn ever spoke with him about the Agreement, solicited him to do business with FIP, told him that the Agreement was not a loan, signed the Agreement, or personally participated in any of the conduct alleged in the CAC.

Kohn's status as member and manager of FIP is not sufficient to hold him personally liable. Rather, Plaintiff must allege facts to support a plausible inference that Kohn may be held personally liable for the acts of FIP (*i.e.*, an alter ego theory) or that Kohn directly participated in the alleged UCL violations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") Plaintiff's failure to do so warrants dismissal of the CAC as to Kohn individually.

/////

### III. PLAINTIFF'S UCL, CLRA, USURY, TILA, AND CIVIL RICO CLAIMS ARE TIME BARRED.

Plaintiff's claims are time barred because he entered into the Agreement in December of 2012, outside the statutes of limitations for his UCL, CLRA, TILA, usury, and civil RICO claims, and Plaintiff fails to allege any facts that would justify tolling those limitations periods. (*See* Mot. at pp. 15-22.) Plaintiff contends that his claims survive because (1) the "injury discovery" and "delayed discovery" rules rescue his RICO, CLRA, and UCL claims; (2) the doctrine of equitable tolling protects his TILA claim; and (3) the continuous accrual doctrine restarted the statute of limitations on each date that Plaintiff made an individual payment.[4]  None of Plaintiff's arguments saves his five-year old claims.

### A. Plaintiff's Admission that He Received and Signed the Agreement in December 2012 Bars His CLRA, UCL, and civil RICO Claims.

Plaintiff's admission that he entered into the Agreement in December 2012 confirms that the statutes of limitations started running then and have now expired. Plaintiff argues that the statute of limitations for his RICO, CLRA, and UCL claims did not start running in December 2012 because he had no reason to suspect at the time he executed the Agreement that the "true nature of the transaction" was a loan, not a sale. (Opp. at pp. 14 -18.)  This statement contradicts Plaintiff's own admissions and the plain language of the Agreement, and Plaintiff otherwise concertedly refuses to allege when or how he discovered what he claims is the "true nature" of the Agreement, although he is required to do so under Rule 9(b).

Plaintiff concedes that the Agreement constitutes "uncontroverted evidence regarding the *nature of the transaction in question*," and does not contest the Agreement's validity. (Opp. at p. 1) (emphasis added).  Plaintiff instead cites the

---

[4] Even though Plaintiff seeks recovery for interest paid in excess of the principal, he argues in his Opposition that he is entitled to the last two years of payments.  (Opp. at p.19.) Defendants agree that Plaintiff's usury claims (to the extent that they survive the Motion) are limited to payments made within the last two years.

Agreement as evidence that "Defendants offered to Plaintiff $10,000 in exchange for sixty monthly payments of $397 ($23,820 in total) secured by, and paid out of, Plaintiff's military retirement and disability benefits." (Opp. at p. 1.)  Although Plaintiff does not explain how he computed an "imputed interest rate" for his transaction, he presumably used the amount that Plaintiff received, the value of the future income stream sold by Plaintiff to FIP, and the duration of the future income stream being sold.  All of these facts are disclosed in the December 2012 Agreement.  Furthermore, Plaintiff agreed when he signed the Agreement that he had "received and, prior to signing, read a complete copy of this Agreement, including all exhibits and schedules and any documents incorporated by reference herein . . . and [he] has a full and complete understanding of . . . this Agreement[.]" (Agreement § 3.12; *see also* § 3.13 ("[P]rior to signing this Agreement, Seller has reviewed, or had the opportunity to review, this Agreement with independent financial and legal counsel of their own choosing, and Seller has not relied on PAS or PAS' counsel, employees, agents or representatives for any review or interpretation of the terms of this Agreement."); Exh. C, § 2 ("Seller acknowledges that Seller has obtained, or has had the opportunity to obtain, independent legal and financial advisors to provide legal advice and financial advice with respect to the appropriateness of the Seller entering into this transaction).)

Despite admitting that the Agreement is uncontroverted evidence of the nature of the transaction and that the nature of the transaction – i.e., "loan" or "sale"—is the gravamen of his claims (Opp. at p. 5), Plaintiff contends that his CLRA, UCL, and civil RICO claims are not time barred because Plaintiff could not have immediately "realized the truth."  (Opp. at p. 16-17.)  Plaintiff's argument fails under the "injury discovery rule," which governs his civil RICO claim, and the "delayed discovery rule," which applies to Plaintiff's CLRA and UCL claims.

/////

/////

9

1

### 1. Plaintiff's civil RICO claim fails because the Agreement provided him with both actual and constructive knowledge of his alleged injury.

2

3  Under the "injury discovery rule," Plaintiff's civil RICO claims accrued

4  when he had actual or constructive notice that he had been injured. *Pincay v.*

5  *Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001); *Grimmett v. Brown*, 75 F.3d 506,

6  512 (9th Cir. 1996). Plaintiff had constructive notice of his alleged injury when he

7  had "enough information to warrant an investigation which, if reasonably diligent,

8  would have led to the discovery of the fraud." *Pincay*, 238 F.3d at 1110. Here, the

9  Agreement stated that (1) both parties understood that the Agreement was a

10  purchase and sale of a future income stream, not a loan, (Agreement § 3.9); and

11  (2) FIP was purchasing a portion of Plaintiff's future income stream from 60

12  months of pension payments for $10,000. (Agreement Exhs. A & B.) Plaintiff's

13  civil RICO claim alleges the Agreement was actually a loan that created an

14  "unlawful debt." (CAC ¶¶ 113-130.) Even if Plaintiff is right that the Agreement

15  created a "debt" (which it did not), he had enough information to warrant an

16  investigation into whether the sale of a portion of his future income was an

17  "unlawful debt" when he signed the Agreement. Plaintiff did not do so in a timely

18  fashion, and his five-year old claims are time barred.

19  Plaintiff's citation of the Ninth Circuit's decision in *Living Designs, Inc. v.*

20  *E.I. Du Pont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005), does not help his

21  argument. (Opp. at pp. 15-16.) In that case, the plaintiffs alleged that the

22  defendants withheld evidence to induce plaintiffs into settling a prior litigation.

23  *Living Designs*, 431 F.3d at 358. After plaintiffs signed the settlement agreement, a

24  different court sanctioned one of the defendants in a related case for intentionally

25  withholding evidence. *Id.* The district court in *Living Designs* granted summary

26  judgment on plaintiff's RICO claims, holding that the other court's order put

27  plaintiffs on constructive notice of their injury. *Id.* at 365. The Ninth Circuit

28  overturned that ruling, concluding that the district court "erred in determining that,

1    as a matter of law, the attention received by Judge Elliott's ruling could be imputed

2    to the Plaintiffs." *Id.*  In support of its decision, the Ninth Circuit relied on a case

3    holding that a district court erred in determining that newspaper reports about the

4    defendants were sufficient to put the plaintiffs on notice.  *Id.* at 366.  This analysis

5    is not applicable here.

6         Plaintiff does not and cannot explain how the facts in *Living Design* align

7    with the facts in this case, because it is uncontroverted here that Plaintiff received

8    the Agreement in 2012 and that the Agreement contains all of the facts Plaintiff

9    relied upon to allege that the Agreement is a "loan," rather than a sale of a future

10   income stream.  Instead, Plaintiff points out that the defendant in *Living Designs*

11   "did not allege that the *Living Designs* plaintiffs knew or should have known of the

12   fraud when they executed their settlement agreements." (Opp. at pp. 15-16).  But

13   Defendants are not bound by the unexplained decisions of other litigants, and there

14   are numerous possible explanations for why the *Living Designs* plaintiffs might

15   have omitted that argument, including because, unlike here, the settlement

16   agreement did put the plaintiffs on notice of their alleged injury.  The decision in

17   *Living Designs* is both factually distinguishable and inapposite.

18        The Ninth Circuit's decision in *Pincay*, on other hand, is directly on point.

19   The plaintiffs in *Pincay* alleged that the defendants committed civil RICO

20   violations by orally agreeing to charge plaintiffs a 5% fee for managing their

21   financial affairs, and then collecting additional amounts by directing plaintiffs into

22   investments in which the defendants had a financial interest.  *Pincay*, 238 F.3d at

23   1107-08.  The Court upheld dismissal of these claims as untimely because the

24   plaintiffs had previously signed documents stating that defendants would receive

25   compensation in excess of the 5% fee, and the Court reasoned that "[i]t is hard to

26   imagine what would constitute 'enough information to warrant an investigation' if

27   receiving a written disclosure of one's purported injury does not."  *Id.* at 1110.

28   Therefore, the RICO claim was time barred.

1    Plaintiff tries to distinguish *Pincay* by arguing the defendants "*plainly and*
2    *repeatedly disclosed*, in writing, that they were indeed charging more than 5% on
3    some investments" while "the record reflects that Plaintiff received *no* written
4    disclosure alerting him of his alleged injury." (Opp. at p. 16, n.15 (emphasis in
5    original).) But Plaintiff's Agreement told him exactly how much money he would
6    receive from FIP, how much of his future income stream he was selling to FIP in
7    return for the lump sum payment, and how the sale would occur. Thus, just like in
8    *Pincay*, the Agreement disclosed the terms of the transaction and Plaintiff had
9    sufficient facts to "warrant an investigation"[5] into whether he had been injured, but
10   failed to timely do so.

11              **2.      Plaintiff cannot invoke the "discovery rule" because the**
                         **Agreement put him on inquiry notice and he has not pleaded**
12                       **any facts that he discovered during the limitations period.**

13   Plaintiff suggests in a footnote that his UCL and CLRA claims are not time
14   barred because of the "delayed discovery rule." (Mot. at p. 15 & n.14.) To invoke
15   that doctrine, Plaintiff must "'specifically plead facts to show (1) the time and
16   manner of discovery and (2) the inability to have made earlier discovery despite
17   reasonable diligence.'" *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808
18   (2005) (quoting *McKelvey v. Boeing N. Am., Inc.*, 74 Cal. App. 4th 151, 160
19   (1999)). Because Plaintiff does not allege that he discovered a previously hidden
20   fact revealing that his Agreement was actually a "loan," he cannot rely on the
21   delayed discovery rule to toll the statutes of limitations.
22   /////

23   _____

24   [5] Plaintiff also quibbles with *Pincay* by pointing out that it is a "post-trial opinion."
     (Opp. at p.16 & n.15.) Plaintiff does not explain how the procedural posture in
     *Pincay* has any bearing on the applicability of the Ninth Circuit's holding that
25   receiving written disclosure of an alleged injury begins the statute of limitations
     period for a civil RICO claim. *See Pincay*, 238 F.3d at 1107, 1110. Plaintiff's
26   attempted distinction is also irrelevant because Plaintiff does not contest that he
     received the Agreement in December 2012, nor does he contest the *authenticity* of
27   the Agreement submitted with Defendants' motion. Therefore, the ruling in *Pincay*
     that receiving written disclosure of a purported injury puts a plaintiff on
28   constructive notice as a matter of law is relevant to this motion.

1    Plaintiff nonetheless argues that, despite having "uncontroverted evidence of

2    the nature of the transaction" in December 2012, Plaintiff did not realize that the

3    transaction was a "loan" rather than a "sale" until sometime after 2012.  (Opp. at

4    pp. 16-17.)  Although Rule 9(b) requires specificity in this regard, Plaintiff is

5    unable to specify a date or the circumstances under which he allegedly had this

6    realization, and presumably continues to conceal this information because it would

7    confirm his claims are time barred.  Moreover, the mere fact that Plaintiff did not

8    come up with the legal theory underlying his complaint until years later has no

9    impact here because he was aware of the *facts* he claims support his causes of

10   action well outside the limitation period.  *See McGee v. Weinberg*, 97 Cal. App. 3d

11   798, 803 (1979) ("The statute of limitations is not tolled by belated discovery of

12   legal theories, as distinguished from belated discovery of facts."); *Marshall v. PH

13   Beauty Labs, Inc.*, 2015 WL 3407906, at *2-3 (C.D. Cal. May 27, 2015) (rejecting

14   delayed discovery claim based on Plaintiff's allegation that "she discovered the

15   cause of action in May 2014 after speaking with her counsel").

16   **B.    Plaintiff Has Not Alleged Sufficient Facts to Justify Equitable
            Tolling of the Statute of Limitations for His TILA Claims.**

17

18   Plaintiff contends TILA's one-year statute of limitations should be equitably

19   tolled because "Defendants serially misrepresented the true nature of the underlying

20   transaction, such that Plaintiff had no reason to know *or even suspect* that the

21   Agreement was a loan and therefore no reason to discover the fraud or

22   nondisclosures underlying his TILA action."  (Opp. at p. 18.)  Again, Plaintiff

23   cannot square this argument with his admission that the Agreement is

24   "uncontroverted evidence" of the "nature of the transaction in question," and it

25   should be rejected.  (Opp. at p. 1.)  This Court previously rejected a similar attempt

26   to toll the statute of limitations because the plaintiff had stated that the "'violations'

27   of TILA for which [plaintiff] seeks damages 'are apparent on the face' of the

28   documents."  *Ung v. GMAC Mortg., LLC*, 2009 WL 2902434, at *2 (C.D. Cal.

Sept. 4, 2009). As this Court held in *Ung*, "Plaintiff's failure to inspect or understand the documents does not toll TILA's statute of limitations." *Id.* The same reasoning applies here.

The Ninth Circuit and this Court have also rejected attempts to toll the TILA statute of limitations based on a plaintiff's alleged ignorance regarding the nature of the transaction. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045-46 (9th Cir. 2011) (dismissing TILA claim as untimely because "plaintiffs have not alleged circumstances beyond their control that prevented them from seeking a translation of the loan documents that they signed and received"); *Martinez v. America's Wholesale Lender*, No. EDCV 09-893-VAP (OPx), 2010 WL 431220, at *2 (C.D. Cal. Feb. 1, 2010) ("The allegation that the loan documents were 'unclear' does not provide a basis for tolling.").

Because Plaintiff raised his TILA claims well outside the one-year statute of limitations and has not and cannot allege any reason why the limitations period should be equitably tolled, his TILA claim must be dismissed with prejudice.

**C.     Plaintiff Cannot Invoke the "Continuous Accrual Doctrine" Because the CAC is Premised on a Fraud Theory Emanating from Facts Disclosed in the Agreement.**

Plaintiff also fails to meet his burden of demonstrating that his otherwise untimely UCL and CLRA claims[6] survive under the "continuous accrual doctrine." *See Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1197 (2013). In a futile effort, Plaintiff abandons his prior focus on the Agreement and the alleged misrepresentations about its "true nature" and instead tries to recast the CAC as seeking recompense for a series of "recurring unfair acts." (Opp. at p. 20.)

---

[6] Plaintiff does not state explicitly whether the "continuous accrual" argument applies to both his UCL and CLRA claims, but Defendants assume for the sake of argument that he intended to apply the theory to both claims. Plaintiff also suggests incorrectly that the "separate accrual" rule applicable to civil RICO claims is the same as the "continuous accrual rule." (Opp. at p. 19 n. 16.) As previously noted, the "separate accrual rule" is inapplicable because Plaintiff has not alleged a "new and independent act" within the limitations period. (Mot. at pp. 20-21.) Plaintiff does not contest this argument.

Plaintiff's own allegations in this regard foreclose his attempts to invoke the "continuous accrual doctrine."

Plaintiff argued that the CAC satisfied Rule 9(b)'s heightened pleading standard because the "gravamen of [his] claims are that Defendants misrepresented their transactions as a 'sale' when they were actually loans." (Opp. at p. 5.) Specifically, Plaintiff alleges in his UCL claim that Defendants required Plaintiff to assign[7] his right to receive a military pension, assessed interest in excess of the legal limit, disguised loan transactions as non-loan transactions, inserted unconscionable and unenforceable terms into contracts, presented misleading descriptions of the Agreement's benefits, and charged imputed interest in excess of the legally permitted rate. (CAC ¶¶ 84-85.) Likewise, he bases his CLRA claim on allegations that FIP misrepresented the nature of the transaction and inserted unconscionable terms into the contract. (CAC ¶ 95.) Plaintiff also seeks to represent a class of individuals "who have entered into a transaction with Defendants in which Defendants paid upfront cash in return for the veteran's promise to redirect monthly pension or disability benefits." (CAC ¶ 74.) In other words, Plaintiff's allegations focus almost exclusively on the alleged misrepresentations in the Agreement and the purported illegality of "assigning" a military pension, not on the "unfairness" of the recurring payments.

The reason for Plaintiff's shifting positions is obvious: the court in *Aryeh* noted that the "continuous accrual doctrine" would likely not rescue a claim that

---

[7] Although Plaintiff states repeatedly in the CAC and his Opposition that he "assigned" his right to receive military pensions, he is unable to point to a specific provision in the Agreement requiring assignment because there is no such provision. (*See, e.g.*, Opp. at pp. 6, 16; CAC ¶¶ 2, 6.) The Agreement is incorporated by reference into the CAC because its contents were alleged in the CAC and the Agreement forms the basis for the CAC. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds in Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); (*see also,* Mot. at p. 2, n.2). Therefore, to the extent Plaintiff's allegations of assignment in the CAC differ from the actual terms of the Agreement, the terms of the Agreement control, and confirm that there is no assignment. *See Gamble v. GMAC Mortg. Corp.*, No. C-08-05532 RMW, 2009 WL 400359, at *3 (N.D. Cal. Feb. 18, 2009).

"sounded solely in fraud and alleged a single fraud committed at contract formation." *Aryeh*, 55 Cal. 4th at 1202.  Even though Plaintiff tries to recast his UCL and CLRA claims as "continuous accrual" claims, the actual allegations demonstrate that Plaintiff has pleaded a "single fraud committed at contract formation."

Even if this Court were to accept Plaintiff's characterization, however, it must grant Defendants' Motion as to any alleged UCL or CLRA claim that is premised on purported misrepresentations in the Agreement itself since those claims are untimely.  *See, e.g.*, *Small Axe Enterprises, Inc. v. Amscan, Inc.*, Case No.: 3:16-cv-00981-BEN-WVG, Slip Op., 2017 WL 1479236, at * 6 (S.D. Cal. Apr. 25, 2017) (granting motion to dismiss for allegedly unlawful business practice prior to the four-year statute of limitations but permitting recovery for those that fall within the limitations period); *Adams v. United of Omaha Life Ins. Co.*, Case No. SACV 12-969-JST (JPRx), 2013 WL 12113224, at *5 (C.D. Cal. Apr. 24, 2013) (holding that "Plaintiff's claim is . . . time-barred insofar as it is based on alleged fraudulent representations made prior to the limitations period"); *Gustafson v. SunTrust Mortg., Inc.*, CV 13-1502 PSG (SHx), Slip Copy, 2013 WL 12122436, at *5 (C.D. Cal. May 13, 2013) (dismissing UCL claim as untimely to the extent that plaintiff alleged violations arising out of the origination of a loan, but allowing plaintiff to amend to seek the appropriate remedy as to claims that were not based on loan origination).

## IV.   THE CONTRACTUAL CHOICE-OF-LAW PROVISION DOES NOT ALLOW THIS COURT TO APPLY THE UCL EXTRATERRITORIALLY TO PLAINTIFF.

Plaintiff ignores California's presumption against extraterritorial application of the UCL and argues that he may invoke the UCL because the Agreement includes a California choice of law provision and FIP is a California corporation. (Opp. at pp. 2-4.)  Plaintiff's argument contravenes authority from the Ninth Circuit, the California Supreme Court, and California district courts.

In *Gravquick A/S v. Trimble Navigation International*, the Ninth Circuit noted that "[w]hen a law contains geographical limitations on its application . . . courts will not apply it to parties falling outside those limitations, *even if the parties stipulate the law should apply*." 323 F.3d 1219, 1223 (9th Cir. 2002) (emphasis added).  The California Supreme Court determined in 2011 that the UCL includes a "geographical limitation on its application" because "neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially."  *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011); *see also* Mot. at pp. 22-23.  Based on *Gravquick* and *Sullivan*, the Northern District of California rejected the same argument raised by Plaintiff and concluded that UCL claims did not apply extraterritorially even though the parties had a contract with a California choice of law provision.  *O'Connor v. Uber Tech., Inc.*, 58 F. Supp. 3d 989, 1005 (N.D. Cal. 2014).  The *O'Connor* court further noted that "a contractual choice of law provision that incorporates California law presumably incorporates *all* of California law—including California's presumption against extraterritorial application of its law."  *Id.* at 1005; *see also Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-0982 EMC, 2012 WL 12942824, at *4 (N.D. Cal. May 3, 2012) ("[E]ven if the provision identified by Plaintiffs were a choice-of-law provision, there is nothing to indicate that the parties intended to incorporate only portions of California law and exclude the incorporation of California law's presumption against extraterritoriality.").  Thus, the Agreement's choice of law provision also incorporates California's presumption against applying the UCL to residents outside of California, including Plaintiff.  Even if it did not, the Agreement's choice of law provision does not trump the California Supreme Court's decision in *Sullivan*.

Plaintiff also fails to allege that his injury occurred in California or that Defendants' conduct occurred in California.  Once again, this Court's decision in *Tidenberg* is instructive.  The court in *Tidenberg* declined to conclude that, because

1    the corporate defendant's principal place of business was in California, the court

2    could presume that "any false or misleading statements emanated from California."

3    *Tidenberg*, 2009 WL 6054249, at *5.  The Court found that Plaintiff failed to

4    "allege any specific facts linking Defendants' contacts with California to the claims

5    Plaintiff asserts against them," and specifically noted that Plaintiff failed to allege

6    the individual defendants' contacts with California.  *Id.*  Therefore, the Court held

7    that the complaint failed to establish the constitutionally-mandated 'significant

8    contact' with California."  *Id.*

9         The same is true here.  Plaintiff does not allege any facts regarding Kohn's

10   relationship to California, and relies exclusively on FIP's principal place of

11   business to assume that alleged misrepresentations emanated from California.  The

12   only conceivable allegations linking FIP to California appear in the personal

13   jurisdiction allegations[8] in which Plaintiff alleges that "Defendants advertised to,

14   solicited, and made and collected pension loans to and from pensioners, including

15   Plaintiff, from Defendants' California headquarters."  (CAC ¶ 10.)  But these

16   conclusory allegations against "Defendants" are insufficient to expand the UCL's

17   reach to a non-resident, just as they are insufficient to meet the Plaintiff's pleading

18   obligations under Rule 9(b) to allege where and how Plaintiff interacted with FIP

19   and entered into the Agreement.  *See In re Toyota Motor Corp.*, 785 F. Supp. 2d

20   883, 917 (C.D. Cal. 2011) (holding that plaintiff's allegation that "the decision

21   to . . . engage in deceptive marketing was made, in part, in California" was not

22   sufficient detail to survive a motion to dismiss).

23   /////

24   /////

25   /////

26   _____

27   [8] "The issue of personal jurisdiction over plaintiffs in a class action is entirely
     distinct from the question of the constitutional limitations on choice of law . . . ."
28   *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821, 105 S. Ct. 2965, 2979, 86 L.
     Ed. 2d 628 (1985)

## V.   THE CLRA DOES NOT APPLY TO PLAINTIFF'S ALLEGED "LOAN."

Even if Plaintiff's assertion that his transaction with FIP was a disguised loan is correct—and it is not—Plaintiff's CLRA claim nonetheless fails because the CLRA does not apply to extensions of credit or money.  *Berry v. Am. Exp. Publishing, Inc.*, 147 Cal. App. 4th 224, 233 (2007); *see also* Mot. at p. 23-24. Although Plaintiff offers two arguments for sweeping the Agreement into the CLRA's sphere of influence, neither has merit.

First, Plaintiff urges this Court to follow *Hernandez v. Hilltop Fin. Mortg., Inc.*, 622 F. Supp. 2d 842, 849 (N.D. Cal. 2007), and similar cases, extending the CLRA to mortgage transactions that also involved servicing or other ancillary conduct that went beyond the loan itself.  (Opp. at p. 10.)  Plaintiff's authority predates *Fairbanks v. Superior Court*, in which the California Supreme Court confirmed that a financial transaction is not a "service" under the CLRA even though such a transaction may also include ancillary services. 46 Cal. 4th 56, 61 (2009) (holding that a life insurance contract obligation to pay money is not a "good" or "service" under the CLRA, even if it involves ancillary services related to use, maintenance, or repayment).  To find otherwise by "[u]sing the existence of these ancillary services to bring intangible goods within the coverage of the [CLRA] would defeat the apparent legislative intent in limiting the definition of 'goods' to include only 'tangible chattels.'" *Id.* at 65.  Here, Plaintiff's authorities, save one case, pre-date *Fairbanks*, and do not allow Plaintiff to apply the CLRA here.

Plaintiff also contends that this Court's decision in *Rex v. Chase Home Finance, LLC*, 905 F. Supp. 2d 1111 (2012) supports application of the CLRA to financial transactions, but that argument is both outdated and incorrect.  Since *Rex*, the California Court of Appeal has extended *Fairbanks* to apply to mortgage lending and servicing, confirming that ancillary services *do not* transform a lending

transaction into a good or a service.  *See, e.g., Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29, 33 (2015) (affirming that "*Fairbanks* applies with equal force to lenders.")  To the extent *Rex* held to the contrary, it is no longer good law. Indeed, more recent cases have declined to follow *Rex* because it relied on pre-*Fairbanks* authority and predates *Alborzian*.  *See, e.g., Jamison v. Bank of Am., N.A.*, 194 F. Supp. 3d 1022, 1031-32 (E.D. Cal. 2016) (following *Alborzian* and the majority of more recent district court cases by declining to follow the *Rex* line of cases); *Benedict v. Wells Fargo Bank, N.A.,* No.14-0770, 2014 WL 2957753 at *3 (C.D. Cal. Jun. 30, 2014) (noting that the court could not reconcile arguments seeking to extend the CLRA to loan modifications with *Fairbanks*); *Gerbitz v. ING Bank, FSB*, 967 F. Supp. 2d 1071, 1079-80 (D. Del. 2013) (declining to follow *Rex* because it is based on pre-*Fairbanks* authority and holding that that ancillary services "do not transform an intangible service into a tangible good or service under the CLRA.").  Furthermore, Plaintiff's claim challenges the purported lending transaction itself, and not any ancillary services, confirming that it is not actionable under the CLRA.  *See Consumer Solutions REO, LLC v. Hillery,* 658 F. Supp. 2d 1002, 1017 (N.D. Cal. 2009) (applying *Fairbanks* and dismissing CLRA claim with prejudice where the plaintiff challenged only the validity of a loan and not any non-ancillary services).

Second, Plaintiff argues in his Opposition that, even if the CLRA formerly did not cover financial transactions, the Legislature expanded the CLRA in 2016 through Civil Code § 1770(a)(26), to include "financial products" or "financial services" under the CLRA.  (Opp. at p. 9)  As a threshold matter, Plaintiff did not allege a violation of subsection (a)(26) in the CAC (CAC ¶ 95), nor could he because it was not a part of the CLRA when the Agreement was formed in 2012. *Moore v. Regents of the Univ. of Cal.*, 248 Cal. App. 4th 216, 246 (2016) ("Statutes operate prospectively unless they contain an express retroactivity provision, or it is very clear that the Legislature intended the statute to operate retroactively.")

(internal quotations omitted).  Further, Plaintiff cannot amend the CAC in his Opposition.  *See Schneider v. Cal. Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

But even if the Court does consider Plaintiff's new allegation, Section 1770(a)(26) does not rewrite the CLRA or the definitions of "goods or services"; it simply includes within the auspices of the CLRA specific conduct involving pension assignments that was already unlawful under other laws.  The legislative history of § 1770(a)(26) confirms that it was enacted for this singular purpose, and was not intended to (and did not) open up the CLRA to include all manner of financial products or services that have been excluded from the CLRA since its enactment.  *See* Senate B. No. 386, 2015-2016 Reg. Sess. (Cal. Sept. 2, 2014) (discussing the need to address pension assignment schemes).  As Plaintiff's CLRA claim relies on an alleged "loan" transaction, *Fairbanks* and *Alborzian* apply, requiring the Court to dismiss the CLRA claim without leave to amend.

## VI.    THE CLASS ACTION WAIVER PROHIBITS PLAINTIFF FROM PROCEEDING AS A CLASS REPRESENTATIVE AND WARRANTS STRIKING THE CLASS ALLEGATIONS.

Plaintiff does not contest that he signed the Agreement or that the Agreement includes a class action waiver, nor does he argue that the class action waiver is unconscionable under California law.  Instead, Plaintiff argues that the CLRA's anti-waiver provision renders the class action waiver unenforceable and urges this Court to delay any decision on its class allegations until later in this litigation. (Opp. at pp. 21-25.)  Neither of Plaintiff's arguments supports denying Defendants' motion to strike.  First, Plaintiff's CLRA claim is not viable and must be dismissed (Sections III, V), thereby mooting Plaintiff's CLRA waiver issue.  *See Benson v. S. California Auto Sales, Inc.,* 239 Cal. App. 4th 1198, 1210 (2015), *rev. denied* (Nov. 24, 2015) ("The CLRA prohibits waiving CLRA claims (§ 1751); it says

1   nothing about waiving other kinds of claims.").  Second, Plaintiff has not

2   demonstrated why this Court should delay enforcing the class action waiver since

3   Plaintiff has not even argued that the provision is unconscionable or identified any

4   additional information the Court needs to rule on the enforceability of the waiver

5   provision.

6          The clear and enforceable class action waiver in the Agreement warrants

7   striking Plaintiff's class action allegations under Rule 12(f) now because that rule

8   "grants courts the authority to strike class allegations that 'cannot possibly move

9   forward on a classwide basis.'"  *See Am. W. Door & Trim v. Arch Specialty Ins. Co.*,

10  No. CV 15-00153 BRO SPX, 2015 WL 1266787, at *3 (C.D. Cal. Mar. 18, 2015)

11  (quoting *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013));

12  *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 989–90 (N.D. Cal. 2009) ("Where the

13  complaint demonstrates that a class action cannot be maintained on the facts

14  alleged, a defendant may move to strike class allegations prior to discovery.");

15  *Romero v. Securus Techs., Inc.,* 216 F. Supp. 3d 1078, 1095 (S.D. Cal. 2016)

16  ("[T]he court may grant a motion to strike class allegations if it is clear from the

17  complaint that the class claims cannot be maintained.").  Plaintiff nonetheless

18  demands that this Court wait to determine whether the class action waiver is

19  enforceable. Plaintiff relies primarily on *In re Yahoo! Litigation,* 251 F.R.D. 459

20  (N.D. Cal. 2008) (hereinafter "*Yahoo*").  In that case, the court required discovery

21  to determine whether a class action waiver was unconscionable, including evidence

22  of whether defendants had superior bargaining power, whether the plaintiff was

23  subject to external pressures, the extent to which plaintiffs could have feasibly

24  chosen alternatives to contracting and, notably, "whether it would be practical for

25  plaintiffs to pursue individual remedies."[9]  *Id.* at 469-70.

26

27  ───────────────
    [9] As Defendants explained in their Motion, these are the factors California courts
28  have previously considered when determining whether a class action waiver is
    unconscionable.  (Mot. at p. 5.)

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE AND MOTION TO DISMISS

1    *Yahoo* does not prevent this Court from granting Defendants' motion to

2    strike for several reasons.  To start, unlike the plaintiffs in *Yahoo*, *see id.* at 465,

3    Plaintiff does not even argue the class action waiver is unconscionable, even though

4    "[t]he party asserting that a contractual provision is unconscionable bears the

5    burden of proof."[10] *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir.

6    2016).  Instead, he relies solely on the CLRA anti-waiver provision.

7    Similarly, Plaintiff does not identify the additional facts that this Court needs

8    to decide whether the class action waiver is unenforceable because the pertinent

9    facts in this case appear in the Agreement itself—the Court knows the damages

10   claimed by Plaintiff (at least $20,644 plus treble damages and attorney's fees), the

11   purpose of the money ("to pay bills") (*see* Agreement Exh. A), the Agreement is

12   not disputed, and its terms are clear (as well as that Plaintiff's initials are on the

13   Class Action Waiver provision and the Agreement).  These undisputed facts weigh

14   in favor of enforcing the class action waiver because California courts have upheld

15   class action waivers where the amount in question was less than amount sought by

16   Plaintiff.  *See Arguelles-Romero v. Superior Court*, 184 Cal. App. 4th 825, 844

17   (2010) (holding that $16,000 "is not so small that individuals would not be willing

18   to spend the time and effort to pursue an individual claim for the amount,

19   particularly when the prospect of an award of statutory attorney fees is also

20   possible'); *Math Magicians, Inc. v. Capital for Merchants LLC*, No. B241937, 2013

21   WL 6192559, at *9 (Cal. Ct. App. Nov. 26, 2013)[11] (holding that a trebled recovery

22   on $6,000 interest (i.e., $18,000) "is not a small amount as contemplated in

23   —————————————————

24   [10] The closest Plaintiff comes to contesting the class action waiver's conscionability
     is a footnote purporting to distinguish *Walnut Producers of California v. Diamond
     Foods, Inc.*, 187 Cal. App. 4th 634 (2010), on the ground that it involved

25   "commercial entities."  (Opp. at p. 23, n.23.)  Even assuming this satisfied
     Plaintiff's burden, which it does not, *Walnut Producers* made clear that "the same

26   standard for determining unconscionability applies to all types of contracts."
     *Walnut Producers*, 187 Cal. App. 4th at 644.

27   [11] This Court may consider unpublished California state court decisions even
     though they have no precedential value.  *See CPR for Skid Row v. City of Los

28   Angeles*, 779 F.3d 1098, 1117 (9th Cir. 2015).

1  *Discover Bank* and its progeny").  Similarly, Plaintiff's alleged damages are of

2  sufficient magnitude here to incentivize him to proceed with an individual action.

3        Because Plaintiff has not even argued unconscionability and, even if he had,

4  the facts available to the Court at this stage militate in favor of enforcing the class

5  action waiver, this case differs from *Yahoo* and the Court should strike Plaintiff's

6  class allegations.

7  **VII.  CONCLUSION**

8        Based on the foregoing, Defendants respectfully request that the Court grant

9  their motion to strike and to dismiss Plaintiff's CAC with prejudice.

10

11  DATED: December 21, 2017

12                           **DLA PIPER LLP (US)**

13

14

15                       By    */s/ Isabelle L. Ord*
                               Isabelle L. Ord

16

17                       **WOMBLE BOND DICKINSON (US) LLP**

18

19                       By    */s/ Christopher Jones*
                               Christopher Jones

20                       **Attorneys for Defendants**

21                       **FUTURE INCOME PAYMENTS, LLC,**
                     **PENSIONS, ANNUITIES, AND**

22                       **SETTLEMENTS, LLC,**
                     **and SCOTT A. KOHN**

23

24

25

26

27

28

                                24

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE AND MOTION TO DISMISS